UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| MARCELLA J. SIMMONS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. C-10-14 |
| | § | |
| NAVY FEDERAL CREDIT UNION, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION & ORDER

Pending before the Court is Defendant Navy Federal Credit Union's (NFCU) Motion to Dismiss (Dkt. No. 17). NFCU's motion is ripe for ruling and deemed unopposed because the submission date has passed and Plaintiff Marcella Simmons ("Simmons") has not filed a response.[1] After careful consideration of the motion, record, and applicable law, the Court is of the opinion that NFCU's Motion to Dismiss should be **GRANTED**.

**I. Background**

According to the facts set forth in Simmons' Original Complaint (Dkt. No. 1), NFCU hired Simmons as a Senior Loan Officer on September 1, 1988. In December 2008, Yvonne Cantu, who was in her mid-40s, took over the position of Branch Manager. At that time, Simmons was 59 years old. Shortly thereafter, Ms. Cantu began assigning Simmons' duties to younger, less experienced employees. Ms. Cantu would also constantly make comments "such as needing 'new and fresh ideas.'" On or about January 15, 2009, Simmons applied for early retirement. Simmons later felt that Ms. Cantu had harassed, threatened, and forced her into early retirement, so she decided to rescind her retirement. However, her request was denied.

---

1. *See* S.D. TEX. LOCAL RULES 7.3, 7.4 (providing that opposed motions will be submitted to the judge for ruling 21 days from filing, responses must be filed by the submission date, and failure to respond will be taken as a representation of no opposition). The deadline for Simmons' response was November 25, 2010. To date, Simmons has not responded to NFCU's Motion to Dismiss.

On March 24, 2009, Simmons filed a Charge of Discrimination with the City of Corpus Christi Human Relations Commission and the Equal Employment Opportunity Commission (hereinafter "EEOC Charge") (Dkt. No. 17, Ex. 1). On October 26, 2009, Simmons received a notice of right to sue letter from the Texas Workforce Commission (Dkt. No. 1, Ex. A), and on January 19, 2010, Simmons filed this action alleging causes of action for discrimination and retaliation in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623, and its state and municipal counterparts, the Texas Labor Code and Chapter 24 of the City of Corpus Christi Code of Ordinances.[2] NFSU now moves to dismiss all of Simmons' claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

**II. Legal Standard**

Rule 12(b)(6) provides that a party may move to dismiss an action for "failure to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6). When considering a Rule 12(b)(6) motion, a court must accept the plaintiff's allegations as true and draw all reasonable inferences in her favor. *See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *United States v. Gaubert*, 499 U.S. 315, 327 (1991). A court may not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999) (citing *St. Paul Ins. Co. of Bellaire, Texas v. AFIA Worldwide Ins. Co.*, 937 F.2d 274, 279 (5th Cir. 1991)).

---

2. The standards under the Texas Labor Code and Chapter 24 of the Corpus Christi Code of Ordinances are virtually identical to the ADEA. *See* TEX. LABOR CODE §§ 21.051 *et seq.*; CORPUS CHRISTI, TEX. MUNICIPAL CODE OF ORDINANCES, Art. VI, §§ 24-80 to 24-82; *see also Hovanas v. Am. Eagle Airlines, Inc.*, 2009 WL 4639492, at *4 (N.D. Tex. Dec. 8, 2009) ("The requirements for establishing a prima facie discrimination or retaliation claim under the TCHRA mirror those of their ADEA counterparts.") (citing *Claymex Brick & Tile, Inc. v. Garza*, 216 S.W.3d 33, 35 (Tex. App.—San Antonio 2006, no pet.); *see also Martinez v. Wilson Cty.*, 2010 WL 114407, at *6 (Tex. App.—San Antonio Jan. 13, 2010, no pet.) ("'Because our state statute tracks its federal counterpart . . . we may consider analogous federal case law in the interpretation and application of our Texas statute.'") (quoting *Romo v. Tex. Dep't of Transp.*, 48 S.W.3d 265, 269—70 (Tex. App.—San Antonio 2001, no pet.)). Accordingly, the Court addresses these statutes collectively in this Order.

Dismissal can be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *See Frith v. Guardian Life Ins. Co. of Am.*, 9 F. Supp. 2d 734, 737—38 (S.D. Tex. 1998). While a complaint need not contain detailed factual allegations to survive a 12(b)(6) motion, the Supreme Court has held that a plaintiff's "obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (abrogating the *Conley v. Gibson*, 355 U.S. 41 (1957) 'no set of facts' standard as "an incomplete, negative gloss on an accepted pleading standard") (citations omitted). Plaintiff must allege "enough facts to state a claim to relief that is plausible on its face" and "raise a right to relief above the speculative level." *Id.*; *Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 140 (5th Cir. 2007).

**III. Analysis**

As noted *supra*, Simmons did not respond to NFCU's Motion to Dismiss, and the motion is therefore deemed unopposed. However, unopposed motions that dispose of litigation may not be automatically granted. *John v. Louisiana Bd. of Trs. for State Colls. & Univs.*, 757 F.2d 698, 707—10 (5th Cir. 1985). The Court will thus address the merits of NFCU's motion.

**A. Discrimination**

**1. Hostile Work Environment**

Simmons first alleges that NFCU "intentionally discriminated against [her] because of her age in violation of the ADEA by subjecting her to a hostile work environment." (Compl. ¶ 14.)

Assuming, *arguendo*, that a claim for hostile work environment under the ADEA is legally cognizable in this circuit,[3] in order to state such a claim, a plaintiff must allege that: (1) she is forty

---

[3] The Fifth Circuit "'ha[s] never held that the ADEA contemplates hostile work environment claims.'" *Carder v. Continental Airlines, Inc.*, 636 F.3d 172, 178 n.5 (5th Cir. 2011) (quoting *Mitchell v. Snow*, 326 Fed. App'x 852, 854 n.2 (5th Cir. 2009)). It "ha[s] only assumed without deciding that it does." *Id.*

3

years of age or older; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her age; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take remedial action. *McNealy v. Emerson Elec. Co.*, 121 Fed. App'x 29, 34 (5th Cir. 2005). To affect a term, condition, or privilege of employment, the harassing conduct "'must be sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment.'" *Aryain v. Wal-Mart Stores of Tex., LP*, 534 F.3d 473, 479 (5th Cir. 2008) (quoting *Lauderdale v. Tex. Dept. of Criminal Justice*, 512 F.3d 157, 163 (2007)) (alteration in original).[4] Whether an environment is hostile or abusive enough to support a hostile work environment claim depends on a totality of circumstances. *Green v. Adm'rs of the Tulane Educ. Fund*, 284 F.3d 642, 655—56 (5th Cir. 2002), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).

When examining the totality of the circumstances, a court should focus on such factors as: (1) the frequency of the conduct; (2) its severity; (3) the degree to which the conduct is physically threatening or humiliating; and (4) the degree to which the conduct unreasonably interferes with an employee's work performance. *Id.*; *see also Septimus v. Univ. of Houston*, 399 F.3d 601, 611 (5th Cir. 2005). The work environment must also be deemed "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Aryain*, 534 F.3d at 479 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998)).

The Court finds that Simmons has failed to state a claim for hostile work environment under the ADEA. The only "harassment" identified by Simmons is that Ms. Cantu "began assigning

---

4. Although *Aryain* was decided under Title VII, and not the ADEA, the Fifth Circuit has repeatedly looked to Title VII decisions to interpret the ADEA. *See, e.g.*, *Thornbrough v. Columbus and Greenville Ry Co.*, 760 F.2d 633, 638 n.4 (5th Cir. 1985); *Bohrer v. Hanes Corp.*, 715 F.2d 213, 218 (5th Cir. 1983); *Elliott v. Group Medical & Surgical Service*, 714 F.2d 556, 557—58 n.1 (5th Cir. 1983). Moreover, in *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 567 (1979), the Supreme Court instructed that where the source of a section in the ADEA parallels Title VII, the two statutes are to be construed consistently.

[Simmons'] duties to younger, less experienced employees" and "would constantly make comments such as needing 'new and fresh ideas.'" (*Id* ¶ 15.) Simmons does not allege that Ms. Cantu's conduct was severe, physically threatening, or humiliating, or that the harassment interfered with Simmons' work performance. Simmons also fails to allege that she subjectively perceived Ms. Cantu's conduct to be hostile or abusive; however, even if she had, the Court finds the alleged conduct is not objectively offensive. Finally, the Court finds that any comments concerning "new and fresh ideas" are insufficient as a matter of law to constitute age discrimination. *See Waggoner v. City of Garland, Tex.*, 987 F.2d 1160, 1166 (5th Cir. 1993) (statement that a younger person could do faster work and reference to plaintiff as an "old fart" insufficient to establish age discrimination); *Turner v. North Am. Rubber, Inc.*, 979 F.2d 55, 59 (5th Cir. 1992) (comment that plaintiff was being sent "three young tigers" to assist with operations was insufficient to show discrimination); *Guthrie v. Tifco Indus.*, 941 F.2d 374, 378—79 (5th Cir. 1991) (outgoing president's comment that the new president "need[ed] to surround himself with people his age" insufficient to establish age discrimination); *Elliott v. Group Medical & Surgical Serv.*, 714 F.2d 556, 565 (5th Cir. 1983) (employer's statement that he wanted "new blood" and a "lean and mean team" did not show age discrimination).

**2. Compensation**

Simmons next alleges that NFCU "discriminated against [her] in connection with . . . compensation." (Compl. ¶ 18.) Specifically, Simmons claims that she "was denied the same benefits and pay as similar younger employees . . . ." (*Id.* ¶ 23(a).)

The scope of Simmons' discrimination claims in this lawsuit is limited to the allegations made in her EEOC Charge and the scope of the investigation that could reasonably be expected to grow out of the Charge. *See Fine v. GAF Chem. Corp.*, 995 F.2d 576, 577—78 (5th Cir. 1993) (the charge of discrimination defines the scope of the claims the plaintiff may pursue in court, and a

5

plaintiff is barred from pursuing any discrimination claim that was not raised in the EEOC charge); *see also Terrell v. U.S. Pipe & Foundry Co.*, 644 F.2d 1112, 1123 (5th Cir. 1981) ("[A] rule of reason . . . permits the scope of a Title VII suit to extend as far as, but no further than, the scope of the EEOC investigation which could reasonably grow out of the administrative charge.").

Simmons' EEOC Charge did not include any allegations that she was denied the same benefits and pay as younger employees, and the Court finds that Simmons' new-founded allegations concerning compensation do not "grow out of" her claim that, because of her age, she was harassed and intimidated into early retirement and then not allowed to rescind her resignation. Thus, Simmons must independently exhaust her administrative remedies on her compensation claim before pursuing it in this Court. *See Fine*, 995 F.2d at 578; *Randel*, 157 F.3d at 395.

### 3. Loss of Job Responsibilities

Simmons further alleges that NFCU "discriminated against [her] in connection with the . . . terms, conditions, and privileges of employment." (Compl. ¶ 18.) Specifically, Simmons complains that for an approximately one-month period, Ms. Cantu removed certain unspecified job duties from her and assigned them to younger, less experienced employees. (*Id.* ¶ 15.)

An action that affects the "terms, conditions, or privileges of employment" is generally referred to as an "adverse employment action." *See Young v. City of Houston*, 906 F.2d 177, 182 (5th Cir. 1990). "In [the Fifth] [C]ircuit, a plaintiff must show that the employer made an ultimate employment decision to establish that the plaintiff has suffered an adverse employment action." *Williams v. U.S. Dep't of Navy*, 149 Fed. App'x 264, 269 (5th Cir. 2005) (citing *Hernandez v. Crawford Bldg. Material Co.,* 321 F.3d 528, 531 (5th Cir. 2003)). Ultimate employment decisions include hiring, discharging, promoting, compensating, and granting leave. *Id.* The Fifth Circuit has repeatedly held that the loss of some job responsibilities without a reduction in benefits or pay does not qualify as an ultimate employment decision. *Id.*

The Court finds that Simmons' allegation that her job duties were reassigned to younger, inexperienced employees is insufficient to state a claim for discrimination with respect to the terms, conditions, or privileges of employment. Simmons does not allege that she was demoted or that she suffered any reduction in compensation or benefits as a result of her duties being reassigned. Thus, even if Simmons' allegation regarding the loss of some job duties is true, this does not constitute an actionable adverse employment action under the ADEA. *Id.* (plaintiff did not suffer adverse employment action where she had twenty percent of her job duties removed without a reduction in pay); *Watts v. Kroger Co.*, 170 F.3d 505, 512 (5th Cir. 1999) (a change in schedule and assignment to new tasks was not an adverse employment action); *Bell v. Raytheon Co.*, 2009 WL 2365454, at *9 (N.D. Tex. July 31, 2009) (employee's claim that his responsibilities were transferred to younger employees and that he was no longer the "go-to guy" did not constitute an actionable adverse employment action under Fifth Circuit precedent); *Olivarez v. Univ. of Tex. at Austin*, 2009 WL 1423929, at *3 (Tex. App.—Austin May 21, 2009, no pet.) (a "demotion without change in pay [or] benefits" or "reassignment to [a] more inconvenient job" is insufficient to constitute a tangible or material adverse employment action).

**4. Constructive Discharge**

Simmons next alleges that she was "terminated and/or constructively discharged" based on her age. (Compl. ¶¶ 16, 20.) Specifically, Simmons alleges that she "was forced into constructive discharge/early retirement by Ms. Cantu." (*Id.* ¶ 16.)

To state a claim of discriminatory discharge under the ADEA, a plaintiff must allege facts demonstrating that: (1) she was discharged; (2) she was qualified for the position; (3) she was forty years or older at the time of discharge; and (4) she was either i) replaced by someone under forty, ii) replaced by someone younger, or iii) otherwise discharged because of her age. *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010). When an employee voluntarily

7

resigns, however, she must satisfy the discharge requirement by proving constructive discharge. *See Stewart v. Department of Health and Hospitals*, 117 Fed. App'x 918, 922 (5th Cir. 2004).

A constructive discharge occurs when an employer "makes working conditions so intolerable that a reasonable employee would feel compelled to resign." *Hunt v. Rapides Healthcare System, LLC*, 277 F.3d 757, 771 (5th Cir. 2001); *see also Faruki v. Parsons,* 123 F.3d 315, 319 (5th Cir. 1997); *Ward v. Bechtel Corp.,* 102 F.3d 199, 202 (5th Cir. 1997). The Fifth Circuit has "identified six factors to aid [the Court's] constructive discharge inquiry: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (6) offers of early retirement that would make the employee worse off whether the offer were accepted or not." *Aryain*, 534 F.3d at 480—81 (quoting *Hunt v. Rapides Healthcare System, LLC*, 277 F.3d 757, 771—72 (5th Cir. 2001)). "[D]iscrimination alone, without aggravating factors, is insufficient for a claim of constructive discharge." *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001).

The Court finds that Simmons has failed to allege facts sufficient to state a claim for constructive discharge. First, as noted *supra*, Simmons has not alleged that she was demoted, that her salary was reduced, or that she was assigned to menial or degrading work. Although Simmons recites that she "felt that she was harassed and intimidated into her decision to retire," she has failed to allege facts in support of this conclusory statement. Simmons does not allege that she suffered severe and pervasive harassment, or that Ms. Cantu or anyone else at NFCU otherwise engaged in any "badgering . . . or humiliation . . . calculated to encourage [Simmons'] resignation." *See Aryain*, 534 F.3d at 480—81. Importantly, Simmons has not alleged that she was harassed into early retirement because of her age. To the contrary, Simmons claims that she felt she was going to be terminated, and so she resigned "because she did not want a termination on her employment

8

record." (Compl. ¶ 16.) Likewise, Simmons also fails to allege that she was going to be terminated on the basis of her age. In fact, her Complaint does not state why she felt she was going to be terminated.[5] Finally, even taken as true, Simmons' only age-related allegations—that Ms. Cantu "began assigning [Simmons'] duties to younger, less experienced employees" and "would constantly make comments such as needing 'new and fresh ideas'"—fail to rise to the level of circumstances so intolerable that a reasonable person would have no choice but to resign. To the contrary, Simmons' own allegation that she requested her job back almost immediately after resigning (Compl. ¶ 16) negates any contention that her working conditions were intolerable.

### 5. Refusal to Reinstate

Simmons further complains that "she decided to rescind her retirement. However, [her] request to rescind was denied." (Compl. ¶16.)

A claim for discriminatory refusal to reinstate following an employee's voluntary resignation is treated as a disparate treatment claim. *Landry v. Potter*, 182 Fed. App'x 303, 2006 WL 1342795, at *1 (5th Cir. May 17, 2006). To state a claim for disparate treatment under the ADEA, a plaintiff must set forth plausible facts showing that her employer gave preferential treatment to a younger employee under "nearly identical" circumstances. *Smith v. Wal–Mart Stores*, 891 F.2d 1177, 1180 (5th Cir. 1990) (per curiam); *see also Okoye*, 245 F.3d at 512—13; *Davin v. Delta Air Lines, Inc.*, 678 F.2d 567, 570–71 (5th Cir. 1982).

The Court finds that Simmons has failed to state a claim for disparate impact under the ADEA. Simmons has not alleged that NFCU allowed any younger employee to rescind a voluntary

---

5. According to Simmons' EEOC Charge, Ms. Cantu informed Simmons that she was being terminated "for having hung up on the Assistant Manager" and for having "left a very unprofessional message with the Members Service Rep. II." (EEOC Charge at 1.)

resignation.[6] Simmons has also failed to allege that NFCU refused her request to rescind her retirement based on her age.

### B. Retaliation

Finally, Simmons alleges that NFCU retaliated against her in violation of the ADEA, FLSA, and Section 21.055 of the Texas Labor Code. Specifically, Simmons alleges that: (1) "once [she] complained, she was subjected to retaliation by her supervisors;" and (2) "after [NFCU] was notified by [Simmons] of offending action, [NFCU] not only failed to investigate or take any action to prevent the offensive actions but instead terminated and/or constructively discharged [Simmons] for complaining of the offensive actions." (Compl. ¶¶ 17, 21.)

To state a claim of retaliation under the ADEA, a plaintiff must set forth facts showing: (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) a causal link existed between the protected activity and the adverse employment action. *Aryain*, 534 at 484; *Roberson v. Alltel Information Services*, 373 F.3d 647, 655 (5th Cir. 2004). Not all activity is "protected" by the ADEA. The Act protects employees from retaliation for opposing acts of age discrimination or for charging, testifying, assisting, or participating in any manner in an investigation, proceeding or litigation under the ADEA. 29 U.S.C. § 623 (d).

The Court finds that Simmons has failed to state a claim for retaliation because she has not alleged that she engaged in any "protected activity" under the ADEA. Specifically, Simmons has failed to allege that she complained about or otherwise opposed any acts of age discrimination, or that she charged, testified, assisted, or participated in an investigation, proceeding, or litigation under the ADEA. *See* 29 U.S.C. § 623(d). To the contrary, based on Simmons' EEOC Charge, the

---

6. Simmons' EEOC Charge alleges that "[a]nother employee (mid-30's) had previously submitted her two-week resignation notice. Before her last day she asked if she could rescind her resignation and the Branch Manager approved her request." (EEOC Charge at 2.) However, this allegation does not appear in Simmons' Complaint. For purposes of NFCU's motion to dismiss, the Court may only consider allegations specifically articulated in Simmons' Complaint. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

only "offending action" about which she complained was the "unethical standards of conduct regarding a loan request submitted by a supervisor for her family member." (EEOC Charge at 1.) This is not protected activity under the ADEA or its state or local counterparts. *See* 29 U.S.C. § 623(d); TEX. LABOR CODE § 21.055; CORPUS CHRISTI, TEX. ORDINANCE 23411; *see also Martinez*, 2010 WL 114407, at *6 ("Engaging in protected activity . . . requires a complaint of some sort of discrimination that is covered by the TCHRA . . . A complaint of unfair treatment . . . does not [suffice] . . . .") (citing *Spinks v. TruGreen Landcare, L.L.C.*, 322 F. Supp. 2d 784, 796 (S.D. Tex. 2004)). Moreover, even if Simmons had engaged in a protected activity under the ADEA, her failure to specify this activity in her EEOC charge precludes her from pursuing the claim for the first time in this Court. *See Fine*, 995 F.2d at 578; *Randel*, 157 F.3d at 395.

## IV. Conclusion

For the reasons set forth above, the Court finds that Simmons has failed to state an actionable claim for discrimination or retaliation under the ADEA or its related state and municipal counterparts. Accordingly, NFCU's Motion to Dismiss (Dkt. No. 17) is **GRANTED**, and this action is **DISMISSED**.

It is so **ORDERED**.

**SIGNED** this 26th day of May, 2011.

_____
JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE